**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DAVID KENNEDY,

             Petitioner,                       Case No. 2:09-CV-10218

v.

                                       HON. DENISE PAGE HOOD

MILLICENT WARREN,

             Respondent.

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS**
**CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

      Petitioner David Kennedy, through his attorney, John Minock, has filed a

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he

challenges his convictions for second degree murder, M.C.L.A. 750.317, four

counts of discharging a firearm at or in a dwelling, M.C.L.A. 750.234b, two counts

of carrying a concealed weapon, M.C.L.A. 750.227, two counts of felonious

assault, M.C.L.A. 750.82, and one count of possession of a firearm during the

commission of a felony [felony-firearm], M.C.L.A. 750.227b.  For the reasons that

follow, the petition for writ of habeas corpus is DENIED.

**I. Background**

      Petitioner was charged with open murder, [1] assault with intent to commit

---

    [1]  Under Michigan law, the charge of open murder gives a circuit court jurisdiction to try a
defendant on first and second degree murder charges. *See Taylor v. Withrow,* 288 F.3d 846, 849 (6th Cir.
2002); *See also Williams v. Jones,* 231 F. Supp. 2d 586, 589 (E.D. Mich. 2002)(citing M.C.L.A. 750.316,
750.318; *People v. McKinney,* 65 Mich. App. 131, 135; 237 N.W.2d 215, 218 (1975)).

murder, four counts of discharging a firearm at or in a building, two counts of carrying a concealed weapon, two counts of felonious assault, and one count of felony-firearm.  Petitioner was convicted of the lesser included offense of second-degree murder, was acquitted of assault with intent to commit murder, and was found guilty as charged of the remaining charges following a jury trial in the Washtenaw County Circuit Court.  This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1).  *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> On the evening of October 25, 2002, Kennedy went to a party at Chambers' home in Ypsilanti.  Shortly after Kennedy entered the home, he and Chambers began to argue and exchange profanities because Kennedy had been "looking in [Chamber's] stuff."   Chambers threatened to kill Kennedy, asked Kennedy to leave, and began escorting him towards to door.  Kennedy grabbed Chambers, wrestled him to the ground and, pulling off his own belt, wrapped it around Chambers' neck.  Emmet Jones broke up the altercation and "put [Kennedy] out" of the house.  Jones helped Chambers to his feet and then gave Kennedy a ride to some nearby townhouses.  Twenty to thirty minutes later, Kennedy returned to Chambers' home.  Finding Chambers asleep on a couch, Kennedy pulled a pistol out of his pants pocket, shot four times into the wall above Chambers' head, and left. Sometime later, Kennedy again returned to Chambers' home.  Pamela Smith saw Chambers lying on or near an overturned couch.  Although she did not witness it, Smith believed that Kennedy overturned the couch while Chambers was on it.
>
> Emmet Jones returned to Chambers' home around midnight, saw Smith through the window, and entered the house to speak to her.  Upon entering the living room, Jones saw Kennedy put a gun to Chambers' head.  Jones asked Kennedy if he had lost his mind and demanded to know what was going on.  Kennedy ordered Jones to leave.  Smith tried

to "ease out" with Jones, but Kennedy commanded her to stay. Smith complied but sat down in the kitchen rather than remain in the living room. Smith returned to the living room, and Kennedy ordered her to hand him an extension cord, which Kennedy then used to truss Chambers, tying together Chambers' ankles and hands behind his back and then tying the cord around his neck. Chambers began making choking noises. Smith pleaded that the extension cord was too tight. Chambers twice managed to free himself of the extension cord, which enraged Kennedy who then fired his pistol into the couch. Chambers started gagging and trying to regain his breath; however, the rope was too tight and he eventually stopped moving. Smith panicked and begged Kennedy to let her go. Smith admitted that she was high on crack cocaine at the time, but insisted that she "came to [her] senses" on seeing the incident. Kennedy then left Chambers' home and walked across the street. Glen Richison testified that at approximately 2:00 a.m. on October 26, Kennedy knocked on his apartment door. Richison let Kennedy in and asked him what he wanted so early in the morning. Kennedy said, "I killed Johnny."

*People v. Kennedy*, No. 252104, * 1-2 (Mich.Ct. App. October 19, 2006).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 478 Mich. 869, 731

N.W.2d 720 (2007); *reconsideration den.* 480 Mich. 927, 740 N.W.2d 277 (2007).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Petitioner was deprived of his Sixth Amendment right to the effective assistance of counsel by the failure of court appointed trial counsel to investigate and prepare, and by counsel's substandard performance at trial.

II. Petitioner was deprived of this due process rights to a fair trial under the United States Constitution by the misconduct of the prosecutor.

III. Petitioner was deprived of his Sixth Amendment right to confrontation and his due process rights to a fair trial where the prosecutor was allowed, over objection, to introduce testimony from the key witness that she had heard from third parties that Petitioner had threatened her and where there was no evidence that the threats had in fact been made.

3

IV. (pro se claim) Petitioner was denied due process of law under the Fourteenth Amendment where the State court did not acquire jurisdiction over him.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if

the state court arrives at a conclusion opposite to that reached by the Supreme

Court on a question of law or if the state court decides a case differently than the

Supreme Court has on a set of materially indistinguishable facts. *Williams v.*

*Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs

when "a state court decision unreasonably applies the law of [the Supreme

Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may

not "issue the writ simply because that court concludes in its independent

4

judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

5

"[I]f this standard is difficult to meet, that is because it was meant to be."

*Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the

AEDPA, does not completely bar federal courts from relitigating claims that have

previously been rejected in the state courts, it preserves the authority for a

federal court to grant habeas relief only "in cases where there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with" the

Supreme Court's precedents. *Id.* "Section 2254(d) reflects the view that habeas

corpus is a 'guard against extreme malfunctions in the state criminal justice

systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing

*Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in

judgment)). A "readiness to attribute error [to a state court] is inconsistent with

the presumption that state courts know and follow the law." *Woodford,* 537 U.S.

at 24. In order to obtain habeas relief in federal court, a state prisoner is required

to show that the state court's rejection of his claim "was so lacking in justification

that there was an error well understood and comprehended in existing law

beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at

786-87.

### III.  Discussion

#### A.  Claims # 1 and # 2.  The ineffective assistance of trial counsel/prosecutorial misconduct claims.

In his first claim, petitioner alleges that he was denied the effective

6

assistance of trial counsel.  In his second claim, petitioner alleges that he was

deprived of a fair trial because of prosecutorial misconduct.  Because one of

petitioner's ineffective assistance of counsel claims involves counsel's failure to

object to this prosecutorial misconduct, for purposes of judicial economy, this

Court will also address petitioner's prosecutorial misconduct claim along with this

part of his ineffective assistance of counsel claim. *See Millender v. Adams,* 187

F. Supp. 2d 852, 874 (E.D. Mich. 2002). [2] For the reasons stated below, the

Court finds that petitioner's is not entitled to habeas relief on his first or second

claim.

### 1.  *Standard of Review.*

To show that he was denied the effective assistance of counsel under

federal constitutional standards, a defendant must satisfy a two prong test.  First,

the defendant must demonstrate that, considering all of the circumstances,

counsel's performance was so deficient that the attorney was not functioning as

the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*,

466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong

---

[2]  Petitioner filed his petition for writ of habeas corpus on January 20, 2009 and indicated that a brief in support of the petition would be forthcoming.  Respondent filed an answer to the petition on June 29, 2009, before the brief in support of the petition for writ of habeas corpus was filed.  The brief in support of the petition for writ of habeas corpus was filed by petitioner's counsel on June 1, 2010 and a supplemental brief was filed on June 15, 2011.  Because respondent filed his answer prior to the brief in support of the petition being filed, respondent responded to all of the ineffective assistance of counsel and prosecutorial misconduct claims that had been raised by petitioner on his direct appeal before the Michigan Court of Appeals.  Petitioner's counsel, however, did not raise all of these claims either in his petition or in his brief or supplemental brief in support of the petition for writ of habeas corpus.  Accordingly, this Court will address only those claims that petitioner specifically raised in the pleadings that he has filed with this Court.

presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  "*Strickland*'s test for prejudice is a demanding one.  'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Richter*, 131 S. Ct. at 792).   The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was

unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. at 664).  Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Richter*, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.
>
> *Harrington v. Richter*, 131 S. Ct. at 788.

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" eight years ago "is precisely what

*Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

### 2.  *An evidentiary hearing.*

Petitioner has requested an evidentiary hearing on his ineffective assistance of counsel claims.

When deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable the habeas petitioner to prove the petition's factual allegations, which, if true, would entitle the petitioner to federal habeas relief on his claim or claims. *Schriro*, 550 U.S. at 474. "[B]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Id.*  If the record refutes the habeas petitioner's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing. *Id.*  Stated differently, a habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F. 3d 442, 459-60 (6th Cir. 2001).  Because the petitioner's claims lack merit, as will be discussed in greater detail below, the petitioner is not entitled to an evidentiary hearing.

### 3.  *The individual claims.*

### a. Counsel's failure to adequately investigate the mental health history and background of Pamela Smith.

Petitioner first claims that trial counsel failed to adequately investigate and

present evidence of Pamela Smith's mental health history and background in order to challenge her competency to testify as a witness and/or to impeach her credibility.  Petitioner specifically alleges that counsel failed to present evidence that Pamela Smith had been diagnosed with schizophrenia and bipolar disorder, had been hospitalized for this several times, and had been prescribed psycotropic drugs.  Petitioner also claims that counsel was unfamiliar with the fact that petitioner had a pending home invasion case.

Petitioner initially contends that counsel was ineffective for failing to challenge Smith's competency to testify as a witness.

Under M.R.E. 601, all witnesses are presumed to be competent to testify. *People v. Watson,* 245 Mich. App. 572, 583; 629 N.W. 2d 411 (2001).  The test of the competency of a witness to testify is whether the witness has the capacity and sense of obligation to testify truthfully and understandingly. *Id.*  A court may declare a witness incompetent only if it finds that the witness lacks the capacity or ability to state the truth. *Id.*   The fact that Smith had been diagnosed as being schizophrenic and having bipolar disorder and had spent time in mental health facilities, alone, is insufficient to render her incompetent to testify as a witness against petitioner, so long as Smith was minimally capable of telling the truth. *See e.g. United States v. Phibbs,* 999 F. 2d 1053, 1068-70 (6th Cir. 1999).  As the Michigan Court of Appeals noted in rejecting petitioner's claim that Smith was incompetent to testify, the record established that Smith understood the

11

questions that had been asked by the prosecutor and defense counsel and gave

direct answers to them. *Kennedy,* Slip. Op. at * 8-9.  This Court has reviewed the

videotaped testimony of Pamela Smith[3] and notes that although Smith appeared

nervous at times, shifted often in her seat, and occasionally gave rambling

answers, she did appear lucid, and capable of responding to the lawyers'

questions, as well as to directions from the trial judge.  In this case, petitioner

was not prejudiced by trial counsel's alleged failure to further challenge Smith's

mental capacity, because he has failed to present any evidence to overcome the

presumption that Smith was competent to testify. *See Mitchell v. Kemna,* 109 F.

3d 494, 495-96 (8th Cir. 1997).

        To the extent that petitioner alleges that defense counsel was ineffective

for failing to impeach Smith with her mental health history, her illegal drug use,

or her pending criminal charge and any expectations that she may have had for

obtaining leniency in exchange for her testimony, this claim is without merit.

        A review of the transcript shows that defense counsel questioned Smith

extensively about the fact that she had smoked crack cocaine and had been

drinking alcohol on the night of the murder and had planned on "turning a trick",

engaging in an act of prostitution in order to obtain more cocaine.  Smith

admitted to being "blowed out" on the night of the victim's murder as a result of

her drug and alcohol usage.  Smith admitted that she had been prescribed

---

[3] *See* Petitioner's Exhibit # 7.

12

Haldol, which she acknowledged was a psycotropic drug, around the time that the victim was murdered, although she conceded that she had not taken her medication for the two days prior to the killing. Smith indicated that she was taking Haldol because of a mental breakdown and "bad nerves" although she denied suffering from hallucinations. In response to counsel's questions, Smith acknowledged that she had been placed in psychiatric hospitals at least five and maybe as much as ten times and that she had last been hospitalized at the Oakwood Mental Hospital about one and a half years prior to trial. Smith admitted that she was taking Haldol at the time of petitioner's preliminary examination, when she was incarcerated at the Washtenaw County Jail.

Smith admitted that she had been arrested on January 4, 2003 for home invasion, had testified against petitioner at the preliminary examination on January 21, 2003, and had been released from jail on January 30, 2003, about a week after pleading guilty to the home invasion charge. Smith admitted that when she initially spoke to Detective Peto at the Ypsilanti Police Department on December 19, 2002, there was a warrant out for her arrest for home invasion but that the detective indicated that she would not be arrested if she agreed to be interviewed. Smith indicated that she had been drinking when she was first interviewed by the police. Smith admitted that when she was interviewed again by the police in July of 2003, there was a warrant for her arrest for failing to appear at sentencing on her home invasion charge, but the police did not arrest

13

her on the warrant.

Significantly, counsel questioned Smith extensively about the fact that when she initially spoke to the police in December of 2002 and when she testified at petitioner's preliminary examination in January of 2003, she did not indicate that she saw petitioner strangle the victim.  In response to counsel's question, Smith admitted that she had only told the police the day before trial that she had seen petitioner attempt to strangle the victim.  Smith further conceded that even when she finally told the police that she had witnessed petitioner strangle the victim, she had told them that the victim was alive when she and petitioner left the house, even though at trial she testified that the victim was dead when they left his home. (Tr. 7/16/2003, pp. 124-179; 187-191).

In the present case, defense counsel thoroughly impeached Smith's credibility. Defense counsel extensively questioned Smith about her mental health history, her illegal drug use, her home invasion charge, and the fact that prior to trial, Smith had not indicated that petitioner had strangled the victim and even when she had changed her story prior to trial, she had still indicated that the victim was alive when she and petitioner had left his house.

Undisclosed impeachment evidence is considered cumulative "when the witness has already been sufficiently impeached at trial*." Davis v. Booker,* 589 F. 3d 302, 309 (6th Cir. 2009)(quoting *Brown v. Smith*, 551 F. 3d 424, 433-34 (6th Cir. 2008)).  Given that Smith's credibility had already been thoroughly

14

impeached, petitioner was not prejudiced by counsel's failure to impeach Smith with what amounts to cumulative impeachment evidence. *Id.*

Importantly, in light of the additional evidence establishing petitioner's guilt, petitioner is unable to establish that he was prejudiced by counsel's failure to more extensively impeach Smith.  Glen Richison testified that on the night of the killing, petitioner came to his house and admitted to killing the victim. Additionally, a police technician testified that when she viewed the crime scene, she discovered bleach on the floor, an almost empty bleach bottle, and the victim's hand burned by the bleach.  There was evidence that the pants that petitioner was wearing on the night of the murder had bleach on them, which would link him to the murder.  Finally, petitioner conceded at trial and again concedes here that he earlier in the evening went to the victim's house and assaulted the victim and fired four gunshots in the house.  During this earlier altercation, Melissa Cork testified that she witnessed petitioner wrap a belt around the victim's neck at that point.  Emmet Jones testified that he witnessed petitioner point a gun at the victim's head just prior to the time that Pamela Smith reported that petitioner strangled the victim.  All of this evidence is sufficient to establish that petitioner was the person who strangled the victim.  In light of this additional evidence, counsel's failure to more thoroughly impeach Smith did not prejudice petitioner.

In a related claim, petitioner alleges that counsel was ineffective for failing

15

to call police witnesses to testify about the prior inconsistent statements that had been made to them by Pamela Smith.

Petitioner ignores the fact that Detective Peto was cross-examined by defense counsel and admitted that Smith did not state in his initial December 2002 interview with her that she had seen petitioner kill the victim.  Detective Peto further indicated that Smith did not ask to be taken into protective custody, which called into question her testimony that she had not initially incriminated petitioner because she felt threatened by him.  Detective Peto further testified that even when he spoke to Smith in July of 2003, she did not report that she saw petitioner wrap a cord around the victim's neck. (Tr. 7/17/2003, pp. 40-42, 51).  Because counsel questioned Detective Peto about Smith's prior inconsistent statements, this claim is without merit.

### b.  Deficiencies regarding challenges to the medical examiner's opinion regarding the cause of death.

Petitioner next contends that counsel was ineffective for failing to object to the medical examiner being qualified as an expert on the issue of the cause of death or for failing to obtain an expert witness to challenge the medical examiner's opinion as to the cause of death.

On direct appeal, petitioner objected to Dr. John Somerset's qualifications as an expert witness on the issue regarding the victim's cause of death.  For reasons stated in greater detail in their opinion, the Michigan Court of Appeals

16

concluded that even though Dr. Somerset was not board certified in forensic pathology, given his training and experience, his knowledge of forensic pathology and forensic medicine was based on reliable forensic principles. Dr. Somerset applied his training, experience, and knowledge to the facts in petitioner's case. These facts were based on evidence that Dr. Somerset obtained from the autopsy and the crime scene photographs.  Accordingly, the trial court did not err in admitting Dr. Somerset's testimony concerning the cause of death. *Kennedy,* Slip. Op. at * 7.

The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief, unless the evidence violates due process or some other federal constitutional right. *See Keller v. Larkins,* 251 F. 3d 408, 419 (3rd Cir. 2001). A federal district court cannot grant habeas relief on the admission of an expert witness' testimony in the absence of Supreme Court precedent showing that the admission of that expert witness' testimony on a particular subject violates the federal constitution. *See Wilson v. Parker,* 515 F.3d 682, 705-06 (6th Cir. 2008).  In the present case, the Michigan Court of Appeals concluded that Dr. Somerset was properly qualified as an expert witness on the issue of the cause of death.  Because petitioner has failed to demonstrate a reasonable probability that Somerset's expert testimony would have been excluded had an objection been made, petitioner is not entitled to habeas relief on this claim. *See Pillette v. Berghuis*,

17

630 F. Supp. 2d 791, 802 (E.D. Mich. 2009); *aff'd in part and rev'd in part on other grds,* 408 Fed.Appx. 873 (6th Cir. 2010).

Petitioner also appears to argue that counsel was ineffective for failing to call an independent expert concerning the issue of the cause of death.

Petitioner's claim fails for two reasons. First, petitioner has offered nothing more than speculation that an expert witness could have been obtained to provide testimony that offered an alternative cause of death to strangulation. To establish an ineffective assistance of counsel claim based on a failure to call a witness, a defendant must affirmatively show what the missing evidence would have been and prove that the witness' testimony would have produced a different result. *See Malcum v. Burt,* 276 Supp. 2d 664, 679 (E.D. Mich. 2003)(internal citation omitted). Petitioner has failed to demonstrate that he was denied the effective assistance of counsel from his trial counsel's failure to use or call an expert witness concerning the cause of death. H has not presented any testimony establishing that an expert witness could have testified favorably for him on this issue. *Id.* at 682; *see also Dell v. Straub,* 194 F. Supp. 2d 629, 650-51 (E.D. Mich. 2002)(internal citation omitted).

Secondly, counsel questioned Dr. Somerset extensively concerning the autopsy and his findings concerning the victim's condition and the cause of death. (Tr. 7/17/2003, pp. 148-170). Counsel confronted Dr. Somerset about the fact that neither his initial autopsy report or his testimony from the preliminary

18

examination indicated that he had found hemorrhaging in the muscles of the victim's neck, which he testified at trial was an indicator of strangulation. Dr. Somerset conceded that his initial report mentioned nothing about trauma to the internal portion of the victim's neck. Although Dr. Somerset testified that he first saw evidence of hemorrhaging to the neck after he viewed photographs from the autopsy, he admitted that he did not amend his autopsy report to reflect these findings. (*Id.,* pp. 151-53). Dr. Somerset further acknowledged, in response to counsel's questions, that the victim had arteriosclerosis and that over 50% of the victim's heart was occluded or blocked. (*Id.,* p. 154). Dr. Somerset further acknowledged that there was no blood found in the victim's alveoli, which is often found when a person is strangled. (*Id.,* p. 157). Dr. Somerset admitted that he did not initially call this a death from strangulation, because the victim had been strangled earlier [in the evening]. Dr. Somerset testified that the victim could have lived through that earlier strangulation and died from another cause. Significantly, Dr. Somerset acknowledged that another cause of death could have caused the victim's heart to stop because he had arteriosclerosis and a 50 % occluded left anterior descending artery. Dr. Somerset admitted that there would be no physical signs  if the victim died from a heart attack. (*Id.,* pp. 158-60). Dr. Somerset testified that he never compared the cord used to strangle the victim with the victim's wounds. (*Id.,* p. 161). Dr. Somerset admitted that he saw no furrows on the right side of the victim's neck at the autopsy. (*Id.,* pp. 162-63).

19

Dr. Somerset further acknowledged that if the victim was tied up by his right leg, he could have strangled himself while trying to break free.  Dr. Somerset further admitted that the victim could have had a heart attack while tied up.  Dr. Somerset indicated that there was no way to tell the difference between hypoxia by strangulation and hypoxia by a heart attack. (*Id.,* pp. 166-67).

In the present case, defense counsel's decision to cross-examine Dr. Somerset to obtain evidence in support of petitioner's theory that the victim died from a heart attack, instead of calling an expert witness for the defense on this issue, was a reasonable trial strategy that defeats petitioner's claim. *See Tinsley v. Million,* 399 F.3d 796, 806 (6th Cir. 2005).  Under the circumstances, counsel adequately presented petitioner's challenge to the cause of death through Dr. Somerset, especially given petitioner's failure to identify an expert who could have testified conclusively that petitioner did not die from strangulation. *Id.*

### c. Failure to request an instruction on the lesser included offense of voluntary manslaughter.

Petitioner next alleges that counsel was ineffective for failing to request an instruction on the lesser included offense of voluntary manslaughter.

Under Michigan law, voluntary manslaughter requires that the evidence establish (1) that the defendant killed in the heat of passion; (2) that the passion was caused by an adequate provocation; and (3) that there was not a lapse of time during which a reasonable person could control his passions. *Williams v.*

*Withrow,* 328 F. Supp. 2d 735, 748-49 (E.D. Mich. 2004)(citing *People v. Pouncey*, 437 Mich. 382, 388; 471 N.W.2d 346, 350 (1991)).

In the present case, the evidence established that petitioner and the victim had engaged in a verbal argument. Although the victim had threatened to kill petitioner, no punches or blows were exchanged between the two men.  As petitioner was being escorted out of the house, he grabbed the victim, wrestled him to the ground, and wrapped his belt around the victim's neck, before the fight was broken up by Emmet Jones.  Petitioner was then escorted from the house.  Petitioner returned to the house twenty to thirty minutes later with a pistol and shot into the wall above the victim's head, before leaving again. Petitioner returned a third time, at which point, he strangled the victim.  The claimed provocation in this case involved a verbal argument.  As this Court notes, words alone generally do not provide adequate provocation to reduce a murder charge to manslaughter. *See Allen v. United States,* 164 U.S. 492 (1896); *Pouncey,* 437 Mich. at 391. There was sufficient time for petitioner to "cool off" or to regain control of his passions following this brief verbal dispute.

Given that there was little evidence of provocation on the victim's part, petitioner was not prejudiced by his counsel's failure to request an instruction on the lesser included offense of voluntary manslaughter.*See Harrop v. Sheets,* 430 Fed.Appx. 500, 507 (6th Cir. 2011).

**d.  Counsel's failure to object to prosecutorial misconduct.**

21

Petitioner next contends that counsel was ineffective for failing to object to the various instances of prosecutorial misconduct that he raises in his second claim.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974); *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir.1999)("[p]rosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation"). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances surrounding each individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The Court must focus on "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir. 1997)(quoting *Serra v. Michigan Dep't of Corr.*, 4 F. 3d 1348, 1355 (6th Cir. 1993)). Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006) (quoting

22

*Donnelly*, 416 U.S. at 645).

Petitioner first claims that the prosecutor improperly vouched for the credibility of Pamela Smith and Glen Richison, when he argued that the two witnesses were telling the truth.

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses, because such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F.3d 731, 737 (6th Cir. 1999)(internal citations omitted). "[G]enerally, improper vouching involves either blunt comments, or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *See United States v. Francis,* 170 F. 3d 546, 550 (6th Cir. 1999)(internal citations omitted). It is worth noting, however, that the Sixth Circuit has never granted habeas relief for improper vouching. *Byrd v. Collins,* 209 F. 3d 486, 537 and n. 43 (6th Cir. 2000). Even on direct appeal from a federal conviction, the Sixth Circuit has held that to constitute error, a prosecutor's alleged misconduct of arguing his personal belief, in a witness' credibility or in a defendant's guilt, must be flagrant and not isolated. *See United States v. Humphrey,* 287 F.3d 422, 433 (6th Cir. 2002).

23

Petitioner is not entitled to habeas relief on this claim because the prosecutor's comments were brief and isolated.  An isolated instance of vouching does not make a state trial so constitutionally infirm so as to justify federal habeas relief. *See e.g. Joseph v. Coyle,* 469 F. 3d 441, 474 (6th Cir. 2006).  Secondly, even if these two brief statements amounted to improper vouching, it did not rise to the level of a due process violation necessary for federal habeas relief, because the sizeable amount of evidence offered by the state against petitioner made it unlikely that the jury was misled by these brief statements. *See Wilson v. Mitchell,* 250 F. 3d 388, 398 (6th Cir. 2001).  Lastly, the jury was instructed that the lawyers' statements and arguments were not evidence. (Tr. 7/18/2003, p. 182).  This instruction by the court cured any prejudice that may have arisen from any improper vouching. *Byrd,* 209 F. 3d at 537.

Petitioner further claims that the prosecutor engaged in misconduct by attacking the credibility of Tyrone Benon and by improperly accusing defense counsel of attempting to confuse the jury by pushing back the time of death.

It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial; however, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Byrd v. Collins*, 209 F. 3d at 535.  In the present case, the prosecutor's statements regarding the credibility of Tyrone Benon did

24

not constitute prosecutorial misconduct. The prosecutor's comments were based on reasonable inferences from the record, namely, that Benon had been taking Vicodin and Tylenol 4 and had been drinking alcohol.  Petitioner's claim is also defeated by the fact that the prosecutor's statement was only a small portion of the prosecutor's argument and this comment would not have created an impression that the prosecutor knew of evidence that had not been presented to the jury. *See Cristini v. McKee,* 526 F.3d 888, 901-02 (6th Cir. 2008).

The Court also rejects petitioner's related claim that the prosecutor denigrated the defense by suggesting that defense counsel was attempting to confuse the jury as to the timeline of when the killing took place.  The Sixth Circuit has held that "[a] prosecutor commenting that the defense is attempting to trick the jury is a permissible means of arguing so long as those comments are not overly excessive or do not impair the search for the truth." *Brown v. McKee,* 231 Fed. Appx. 469, 480 (6th Cir. 2007)(quoting *United States v. August*, 984 F.2d 705, 715 (6th Cir. 1992)).  A prosecutor's isolated comments in closing argument that the defense was attempting to trick the jury is not an improper disparagement of defense counsel. *Id.*

Petitioner is not entitled to habeas relief on his claim that the prosecutor improperly denigrated defense counsel, because even if the prosecutor's comments about petitioner's defense were improper, they were not flagrant enough to justify habeas relief. *See Henley v. Cason,* 154 Fed. Appx. 445, 447

25

(6th Cir. 2005).

The Court rejects petitioner's prosecutorial misconduct claim and related ineffective assistance of counsel claim. To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different.  *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).  Because the Court has already determined that the prosecutor's remarks did not deprive petitioner of a fundamentally fair trial, petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle,* 457 F. 3d at 528.  Petitioner is not entitled to habeas relief on this claim.

### e.  Failure to call additional witnesses on petitioner's behalf.

Petitioner next contends that counsel was ineffective for failing to interview Charles Blackman, Andre Hinton, and Cecilia Powell and to call them to testify on petitioner's behalf at trial.

The problem with this portion of petitioner's ineffective assistance of counsel claim is that petitioner has never supplied affidavits from these witnesses either to the state courts or to this Court concerning these witnesses' proposed testimony or their willingness to testify on petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any

26

evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998).  By failing to present any evidence to the state courts in support of this portion of his ineffective assistance of counsel claim, petitioner is not entitled to an evidentiary hearing on this claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)).  Petitioner has failed to attach any offer of proof or any affidavits sworn by the proposed witnesses.  Petitioner has not offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witnesses would have been able to testify and what the content of these witnesses' testimony would have been.  In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial. *See Clark v. Waller,* 490 F. 3d 551*, 557* (6th Cir. 2007).

**f. Failure to introduce impeaching evidence.**

Petitioner lastly contends that counsel was ineffective for failing to offer prior inconsistent statements to impeach Pamela Smith and Tyrone Benon.  The Court has already addressed petitioner's allegations with respect to counsel's failure to adequately impeach Pamela Smith, *infra.*  With respect to petitioner's allegations involving counsel's failure to impeach Tyrone Benon, petitioner has failed to identify what inconsistent statements should have been used to impeach Benon.  Conclusory allegations of ineffective assistance of counsel,

27

without any evidentiary support, do not provide a basis for habeas relief. *See Workman,* 178 F. 3d at 771.  Because this portion of petitioner's ineffective assistance of counsel claim is unsupported, he is not entitled to habeas relief on this claim.

### B.  Claim # 3.  The claim involving Pamela Smith's testimony concerning prior threats made by petitioner towards her.

Petitioner next contends that his Sixth Amendment right to confrontation and his due process right to a fair trial were violated when Pamela Smith was permitted to testify that three of her cellmates at the Washtenaw County Jail had conveyed threats from petitioner to her.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36 (2004).  However, the Confrontation Clause is not implicated, and does not need not be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U. S. 813, 823-26 (2006); *See also Desai v. Booker,* 538 F.3d 424, 425-26 (6th Cir. 2008). Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Crawford,* 541 U.S. at 51-52, 56.  In holding that the Sixth

Amendment right to confrontation does not apply to non-testimonial statements, the Supreme Court stated:

> "The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused-in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of *824 the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid.* An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."

> *Davis,* 547 U.S. at 823-24 (quoting *Crawford,* 541 U.S., at 51).

The statements from the three inmates to Pamela Smith did not qualify as testimonial statements covered by the Confrontation Clause because they were casual remarks made to an acquaintance or a friend and not ones made to law enforcement. *See Deshai,* 538 F. 3d at 427; *See also Jackson v. Renico,* 179 Fed. Appx. 249, 255 (6th Cir. 2006). Morever, because the Confrontation Clause has no applicability to non-testimonial statements, they may be admitted even if they lack indicia of reliability. *See Whorton v. Bockting,* 549 U.S. 406, 420 (2007).

In addition, the prosecution did not introduce the evidence of these threats to prove that petitioner had, in fact, threatened Pamela Smith, but instead offered this evidence to provide a reason why Smith did not initially implicate petitioner in the victim's murder. The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of

29

the matter asserted." *Crawford,* 541 U.S. at 59, n. 9.  Petitioner's Confrontation

Clause claim is without merit.

To the extent that petitioner is alleging a violation of the Michigan Rules of

Evidence, he would not be entitled to habeas relief.  Violations of state law and

procedure which do not infringe specific federal constitutional protections are not

cognizable claims under Section 2254. *Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991).  Errors in the application of state law, especially rulings regarding the

admissibility of evidence, are usually not questioned by a federal habeas court.

*Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).  Petitioner is not entitled

to habeas relief on his second claim.

### C.  Claim # 4.  The jurisdictional claim issue.

In his fourth claim, petitioner contends that the trial court never acquired

jurisdiction over him.  Although petitioner was supposed to file a *pro se* brief in

support of this claim, he never did, nor did petitioner's counsel address this claim

in his brief.

The determination of whether a state court is vested with jurisdiction under

state law over a criminal case is a function of the state courts, not the federal

courts. *Wills v. Egeler,* 532 F. 2d 1058, 1059 (6th Cir. 1976); *See also Daniel v.

McQuiggin,* 678 F.Supp. 2d 547, 553 (E.D. Mich. 2009).  The Sixth Circuit has

noted that "[a] state court's interpretation of state jurisdictional issues

conclusively establishes jurisdiction for purposes of federal habeas review."

30

*Strunk v. Martin*, 27 Fed. Appx. 473, 475 (6th Cir. 2001).  Petitioner's claim that

the trial court lacked jurisdiction to try his case raises an issue of state law,

because it questions the interpretation of Michigan law, and is not cognizable in

federal habeas review. *See United States ex. rel. Holliday v. Sheriff of Du Page*

*County, Ill.,* 152 F. Supp. 1004, 1013 (N.D. Ill. 2001); *Cf. Toler v. McGinnis,* 23

Fed. Appx. 259, 266 (6th Cir. 2001)(district court lacked authority on habeas

review to review petitioner's claim that the state court erred in refusing to instruct

jury on the requirements for extraterritorial jurisdiction, because the claim was

contingent upon an interpretation of an alleged violation of state law).  Petitioner

is not entitled to habeas relief on his fourth claim.

### IV. Conclusion

For the reasons discussed, state court adjudication of the petitioner's

claims did not result in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the

United States Supreme Court.  Nor did the state court adjudication result in a

decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the state court proceeding.  This Court concludes that

the petitioner is not entitled to federal habeas relief on the claims contained in

his petition.

### V. Denial of Certificate of Appealability

In order to obtain a certificate of appealability, a prisoner must make a

substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

To demonstrate this denial, the applicant is required to show that reasonable

jurists could debate whether, or agree that, the petition should have been

resolved in a different manner, or that the issues presented were adequate to

deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473,

483-84 (2000).  When a district court rejects a habeas petitioner's constitutional

claims on the merits, the petitioner must demonstrate that reasonable jurists

would find the district court's assessment of the constitutional claims to be

debatable or wrong. *Id.* at 484.  "The district court must issue or deny a

certificate of appealability when it enters a final order adverse to the applicant."

Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

This Court denies a certificate of appealability because reasonable jurists

would not find this Court's assessment of the claims to be debatable or wrong.

*See Slack v. McDaniel*, 529 U.S. at 484.

## VI.  ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of

habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**


s/Denise Page Hood
**HON. DENISE PAGE HOOD**
**Dated: January 27, 2012**          UNITED STATES DISTRICT JUDGE